Estate of Augusta D. Moyse Schmucker, Isidore Dreyfus and Jerome Lewine, Executors, Petitioners, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 13372.   Promulgated June 28, 1948.

*David Stock, Esq.*, for the petitioners.
*Frost Walker, Esq.*, for the respondent.

## OPINION.

VAN FOSSAN, *Judge*: The sole issue before us is whether or not the decedent made the trust of December 8, 1941, in contemplation of death and thus rendered its corpus includible in her estate, as provided in section 811 (c), Internal Revenue Code.[1]

---

[1] SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

\*     \*     \*     \*     \*     \*     \*

(c) TRANSFERS IN CONTEMPLATION OF, OR TAKING EFFECT AT DEATH.—To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, or of which he has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom ; except in case of a bona fide sale for an adequate and full consideration in money or money's worth. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this subchapter ;

\*     \*     \*     \*     \*     \*     \*

This Court and others have considered countless cases of this character. It is sufficient to state that the issue is a factual one, based here on stipulated facts, exhibits, and the testimony adduced at the hearing, and that the fundamental test is whether the actions of the decedent prompting the disposition of her property were associated with life or with the thought of death. *United States* v. *Wells*, 283 U. S. 102.

A study of the record readily demonstrates that the decedent's actions, attitude, disposition, and temperament all show her to have been a wealthy, selfish, vain, and arbitrary woman; that she was extraordinarily avid in the pursuit of pleasure and self-gratification; that she exacted the keenest enjoyment from the diversions of the moment; that her principal ambition seemed to be to keep herself in the best possible physical condition and to present an attractive appearance in order that she might be able to engage in many kinds of amusement, diversion, and entertainment. We note also that whatever altruistic impulses she may have had were concentrated in her affection for her granddaughter.

The respondent argues, first, that the decedent's will dated June 7, 1941, and the transfer of December 8, 1941, were both parts of a comprehensive scheme for the final distribution of her estate. We find no factual basis for this assumption and argument. The will of June 7, 1941, sets up a complete plan in itself for the devolution of her property. The trust of December 8, 1941, did not supplement that plan. In fact, it can not be related at all to the plan. Cf. *Igleheart* v. *Commissioner*, 77 Fed. (2d) 704, affirming 28 B. T. A. 888. It was a wholly independent action of the decedent, impelled by motives quite foreign to those essential to the execution of a will.

The respondent further argues that the decedent's granddaughter was the natural object of her bounty, that she was interested principally in Susan's securing a portion of her assets after her death, and that the trust was the means of accomplishing that purpose. Again the record does not support respondent's contention. It is reasonable to conclude that the decedent could have made a testamentary disposition of her property entirely to Susan if she had so desired. The chief motive for creating the trust was the decedent's fear that the Germans would defeat the Russians and then invade England, in which country her son and granddaughter were then living. She wanted to assure to Susan adequate care and protection if her son's assets should be destroyed, conscripted, or seized by the enemy.

That desire in itself furnishes an ample motive for establishing the trust. But the decedent had another cogent reason—she wanted Susan to become more eligible for marriage by supplying her with independent means. The trust provided for the accumulation of in-

come until Susan should reach 21 years of age. However, it also empowered the trustees to use the income and even to invade the corpus, to meet any emergency, illness or misfortune, and to pay out for Susan's benefit the entire income and corpus, if necessary. These provisions clearly demonstrate that the decedent was concerned with Susan's welfare from the moment the trust was created and that she wanted her granddaughter to enjoy the benefits of the trust at any time, regardless of the contingency of her death.

The respondent further contends that the decedent was "estate conscious" in relation to state, inheritance, and estate taxes. This conclusion is not borne out by the record. The decedent's advisers attempted to impress on her the advisability of selecting her residence in a state whose tax laws were most favorable to estates, but she ignored their suggestion. She wanted only to be assured that she had ample income to supply her own requirements and that she was still a "millionaire." In fact, she showed far less than a normal interest in the future of either herself or her property. She lived in the present, with apparently the sole thought of gratifying her momentary fancies and of planning for further pleasures in the immediate future. We have no doubt that the motives of the decedent in creating the trust in controversy were associated solely with life. Her entire conduct leads unmistakably to that conclusion.

It will serve no useful purpose to cite and compare the many "contemplation of death" cases with the one at bar. All vary in detail of fact and in degree and kind of motive. The textbook on the subject is *United States* v. *Wells, supra*, and the gist of the decision is found in the following excerpt therefrom:

If it is the thought of death, as a controlling motive prompting the disposition of property, that affords the test, it follows that the statute does not embrace gifts inter vivos which spring from a different motive. Such transfers were made the subject of a distinct gift tax, since repealed. * * * The purposes which may be served by gifts are of great variety. It is common knowledge that a frequent inducement is not only the desire to be relieved of responsibilities, but to have children, or others who may be the appropriate objects of the donor's bounty, independently established with competencies of their own, without being compelled to await the death of the donor and without particular consideration of that event. There may be the desire to recognize special needs or exigencies or to discharge moral obligations. The gratification of such desires may be a more compelling motive than any thought of death.

The principles there stated are particularly applicable to the case before us. In addition to the basic facts heretofore set forth, we have considered the age of the decedent at death; her excellent health prior thereto; the ratio of the value of the trust gift to her entire estate; her refusal to transfer $200,000 instead of $100,000 as the principal of the trust; the character of the witnesses and their confidential re-

lationship to the decedent; and the picture of her last days, during which, until the moment of her death, she not only did not contemplate death, but gave no thought whatever to the fact that it would ensue.

All of these factors lead inescapably to the view that the trust of December 8, 1941, was not made in contemplation of death, and we so hold. Further adjustments of the petitioner's taxes will be made as stipulated.

Reviewed by the Court.

*Decision will be entered under Rule 50.*